STATE EX REL. FRANK JOSEPH NAPIWOSKI
v. RALPH H. TAHASH.

153 N. W. (2d) 138.

September 15, 1967—No. 40,360.

---

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, and *Gerard W. Snell,* Acting Solicitor General, for respondent, warden of State Prison.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying relator's petition for a writ of habeas corpus without a hearing.

On February 17, 1964, an indictment was filed against relator charging him with aggravated robbery contrary to Minn. St. 609.245. The indictment charged that on February 8, 1964, in the city of St. Paul, one Joseph Andrew Dahlby and relator, while armed with a dangerous weapon, wrongfully, unlawfully, and feloniously took money in excess of $100 from Al Hille by means of a threat of the use of imminent force against Hille to overcome his resistance to such taking. To this charge relator entered a plea of guilty in Ramsey County District Court and on March 19, 1964, he was sentenced to the custody of the commissioner of corrections for not more than 10 years.

It appears from the record that on the evening of the robbery Dahlby and relator entered a liquor store in St. Paul; that Dahlby, who was in possession of a weapon, ordered Hille, the clerk, to hand over the money from the cash drawer; that the clerk complied; and that Dahlby and relator ran from the store and were apprehended down the street a short time later.

On October 28, 1965, relator petitioned the District Court of Washington County for a writ of habeas corpus, which petition was denied without a hearing on January 5, 1966. This appeal followed.

Relator contends, on appeal, that the trial court erred (1) in denying his right of allocution before imposition of sentence; (2) in abusing its

discretion by failing to order a presentence investigation before imposition of sentence; and (3) in denying his petition for a writ of habeas corpus without a hearing.

■■■ With respect to his claims of denial of the right of allocution and failure to order presentence examination, the transcript of the arraignment and sentencing proceedings indicates that after relator entered his plea of guilty the court examined him and elicited facts in connection with the robbery. At the conclusion of the examination relator's attorney spoke in his behalf, after which the court imposed the sentence. Relator argues that the record does not indicate that he made any statement in his own behalf and that it shows that at no time did the court inquire of him whether he had anything to say in his behalf.

Relator cites State ex rel. Searles v. Tahash, 271 Minn. 304, 136 N. W. (2d) 70, and other cases in support of his position. In Searles we held that in the absence of a presentence investigation, hearing, or interrogation under Minn. St. 1961, § 610.37,[1] Minn. St. 631.20, or § 243.49, if the defendant is not afforded his right of allocution and his attorney fails to speak on his behalf at the time of sentencing, he is entitled to a vacation of his sentence and the appointment of counsel to present to the trial court all of the mitigating facts, circumstances, and arguments which are available and appropriate to a reconsideration of the sentence imposed.

In State ex rel. Krahn v. Tahash, 274 Minn. 567, 144 N. W. (2d) 262, this court refused to extend its ruling in Searles to situations wherein a presentence investigation was held. We said there that the law does not require the sentence to be vacated if by a presentence investigation there is adequate assurance (as there was in that case) that the court took into account the defendant's version of the circumstances leading to his conviction and other background information which is normally considered in mitigation of the penalty.

In State ex rel. Geiselhart v. Tahash, 274 Minn. 464, 144 N. W. (2d) 354, decided a short time after Krahn, we held that the law did not require that the defendant be asked if he had anything to say, nor did it

---

[1] Repealed by L. 1963, c. 753, and superseded by Minn. St. 609.115.

require a presentence investigation *where before sentence was imposed an extensive examination of defendant was made.*

In the present case it appears to us that there was an extensive examination made before sentence was pronounced. Relator appeared before the district judge on March 19, 1964. Mr. Paul Lindholm, an assistant county attorney, appeared in behalf of the state and relator was represented by Mr. Robert P. Tolaas, public defender. When the case was called for trial, relator's attorney informed the court that it was his understanding in talking with relator that the latter wished to change his plea to guilty. The court asked relator if that was correct and he said, "Yes." The clerk then read the indictment and thereafter asked relator, who had pled not guilty to the indictment, if he wished to change his plea. Relator responded, "Guilty," whereupon he was duly sworn and examined.

In response to the assistant county attorney's questions, relator said he was 48 years old when arrested for the present offense; that he was born in St. Paul, where he attended school through the eighth grade; and that he had lived in St. Paul since birth. He said he was a carpenter and that his last employment had been with a construction company in Savage, Minnesota. He admitted he had developed an intemperate use of alcohol and that he had prior convictions of third-degree burglary in 1935, second-degree grand larceny in August 1943, and third-degree burglary in 1954. He said that he understood the nature of the crime to which he had pled guilty and that he had entered his plea of his own free will without any threats or promises having been made to him.

He stated that on February 8, 1964, he and Dahlby entered a liquor store on Payne Avenue; that he was disguised by having a stocking over his face; that he thought Dahlby had a gun and showed it to the man tending the store; that Dahlby told the attendant "this is a holdup" and then went to the cash register and took money from the drawer; that he thought Dahlby dropped some of the money and that he (relator) picked it up; that he thought a bottle of liquor was taken from the shelf; and that he and Dahlby ran out and were apprehended down the street a short time later.

His attorney then asked relator if alcohol was his real problem and

he admitted it was. He said that he and Dahlby were quite drunk the day of the robbery, and that he was residing with his mother at that time. Relator's attorney stated that he had no further questions.

The court then asked relator if he knew what he was doing and was told he did. Thereafter the assistant county attorney asked relator if he was aware that he was present in the liquor store; that he was taking money; that he was not entitled to the money; and that Dahlby had a gun. He answered all of these questions affirmatively.

Relator's attorney then asked the court if he wished to impose sentence that morning. The court then said:

"Well, what is the Defendant's pleasure in this matter?

"MR. TOLAAS [relator's attorney]: I feel, your Honor, he has the past record, of course, and

"THE COURT [to defendant]: Well, the last time you were convicted was in '54. Did you go to prison on that one?

"THE DEFENDANT: Was it '54 or '53? I don't remember.

"MR. LINDHOLM [assistant county attorney]: It was 2/26 of '54, your Honor.

"THE COURT: I see, and did you spend some time on that?

"THE DEFENDANT: Yes. I did twenty-five months and the rest on parole."

Relator's attorney then explained that relator had a real drinking problem; that in a recent divorce proceeding he had lost considerable property that he and his wife had accumulated over the last few years; that he had been steadily employed; that at the time of his appearance in court relator was a guardian "in his mother's—or in his father's estate, handling money for his mother in that estate"; that on the day of the robbery, while relator was not so intoxicated as not to know what he was doing, he had been drinking; and that his past record in prison indicated he had been a good prisoner. He pointed out that relator had been able to stay out of prison a good many years and requested the court to consider a limitation of sentence. The court then said to relator:

"* * * I suppose, being very frank here, Mr. Napiwoski, you would just as soon have your time start running on this thing, rather than wait another month or so for a presentence investigation.

"THE DEFENDANT: Yes, I would.

"THE COURT: Does the State have any objection to sentencing at this time?

"MR. LINDHOLM: None, your Honor."

The court then informed relator's attorney that it would like to know a little more about relator from his attorney's personal knowledge of him, rather than from relator, and asked for a statement for the record, whereupon the following took place:

"MR. TOLAAS: I can state for the record that I attended high school with his younger brother, knew him very well during this period of time, having had an opportunity to discuss this matter in full with his mother, who is his only remaining parent, for whom he was caring for at the time that this happened, and it seems from the discussion with his family members and the acquaintanceship I have in knowing the caliber of people in this family that all of the problems that this man has relate to alcohol and always have, and other than that he has been able to lead a good life and remain steadily employed.

"THE COURT: Well, it seems quite apparent he works out pretty well when he is either in an institution or is under strict supervision such as a parole board places on him. Apart from that, when he is on his own, he can't seem to cope with the outside.

"MR. TOLAAS: That would seem to be indicative of that, your Honor.

"THE COURT: Are you ready to be sentenced, sir?

"THE DEFENDANT: Yes.

"THE COURT: You, Frank Joseph Napiwoski, having in open court entered a plea of guilty to the crime of Aggravated Robbery as charged in an Indictment filed in this Court on the 17th day of February, 1964, now, therefore, you, Frank Joseph Napiwoski, are hereby adjudged to be guilty of said crime of Aggravated Robbery, and it is the sentence of the law and judgment of this Court that as punishment for said crime you be sentenced to imprisonment and delivered to the custody of the

Commissioner of Corrections at the State Prison at Stillwater, Washington County, Minnesota, for a term of not more than ten years or until duly discharged by due course of law or competent authority.

"That is the sentence of the Court.

"THE DEFENDANT: Thank you, your Honor."

The following are the impressions of the trial judge:

"Minnesota Statutes 243.49 requires the impressions of the trial judge as to the mental and physical condition of the convict, his general character, capacity, disposition, habits and special needs.

"It is the Court's impression that Defendant was in good mental and physical condition. He is apparently an alcoholic who cannot cope with his problem adequately outside institutional or parole supervision.

"Defendant appeared to understand the nature of the proceedings. No presentence investigation was requested nor ordered by the Court in this case inasmuch as Defendant wanted to 'start the clock running' and also since this man has been institutionalized previously, the penal authorities probably have adequate information as to his background, habits and special needs."

It is our opinion, under the record here, that there was such an examination as to the circumstances of the crime, relator's background, and other matters referred to as to differentiate this case from the fact situation in Searles; and that there was such an examination prior to sentence as to comply with Geiselhart. Krahn is factually different in that there a presentence investigation was ordered and made.

We cannot hold under the circumstances here that the conviction is invalid because relator was not asked if he had anything to say before sentence was pronounced. It appears obvious that relator's attorney attempted to inform the court of all mitigating circumstances which might call for clemency and that relator while standing before the court could have volunteered any reasons for clemency if he so desired. It is therefore our opinion that the trial court had all the information before it that a presentence investigation might have brought forth and that relator, possibly realizing his own problem with alcohol, wanted an immediate imposition of sentence so that he could begin to complete it.

In fact, the record substantiates that he requested immediate sentence rather than delay for an investigation. We cannot hold under the facts and circumstances here that relator's counsel did not attempt to fully inform the court before sentencing as to the mitigating facts involved, which apparently were taken into consideration by the court in imposing a sentence which was only half that to which relator might have been subject.

We therefore hold that relator was not denied allocution; that he has not been denied his constitutional rights; and that an evidentiary hearing on the petition for habeas corpus was not required.

Affirmed.