## STATE EX REL. DONALD J. THUNSTROM v. RALPH H. TAHASH.

167 N. W. (2d) 139.

April 18, 1969—No. 40991.

C. *Paul Jones,* State Public Defender, and *Richard W. Swanson,* for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *David J. Byron,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

SHERAN, JUSTICE.

Appeal from an order of the district court discharging a writ of habeas corpus.

On January 28, 1963, petitioner, represented by counsel of his own selection, entered a plea of guilty to the crime of burglary in the third degree. He was sentenced according to law for an indeterminate term. Execution of the sentence was stayed, however, upon condition that petitioner spend 1 year in the Hennepin County workhouse. He submitted to confinement there but disappeared on June 2, 1963. About 2 years later, he was apprehended in the State of Nebraska. On July 22, 1965, the January 28, 1963, stay of sentence was revoked. He was arrested in Nebraska 5 days later and returned to Minnesota. A motion to set aside the conviction and vacate the plea of guilty was denied on October 1, 1965. He has since served the sentence imposed on January 28, 1963.

Petitioner applied to the Washington County District Court for a writ of habeas corpus, which was issued. After a hearing on January 26,

1967, the court ordered the writ discharged by order dated June 8 of that year and this appeal followed.

We consider the claims of petitioner to relief on this appeal notwithstanding the prior denial of his motion to vacate the plea of guilty or the fact that his sentence has now been served.[1] Procedure in these matters is now governed by the Postconviction Remedy Act, effective May 10, 1967.[2]

In summary, petitioner contends: (1) His plea of guilty should be vacated because it was not tendered voluntarily; (2) the sentence imposed on January 28, 1963, was defective for failure to accord him the right to speak before sentence was pronounced; (3) the order of July 22, 1965, did not justify his subsequent confinement because he was not given the notice and hearing required by Minn. St. 609.14, subd. 2.

■ Petitioner's claim that his plea of guilty should be vacated is based upon the theory that it was tendered involuntarily because (a) he believed that certain inculpatory statements made by him while in police custody between January 5, 1963 (when he was arrested pursuant to an order revoking a stay of execution of a prior sentence for a gross misdemeanor), and January 10, 1963 (when a complaint was filed charging him with the crime of burglary), could and would be used against him in the event of trial; (b) he believed that certain evidence taken from his automobile by the police on January 8, 1963, which linked him to the burglary of which he was accused, could and would be used against him were he to persist in his original plea of not guilty; (c) he believed representations that were made to him to the effect that he could, in the event of trial, be convicted on the testimony of an accomplice, an apprehension which was erroneous if neither the statements made by him nor the evidence obtained as a result of the search were receivable in evidence; (d) he was threatened by Minneapolis police officers with prosecution by Federal authorities if he did not plead guilty; (e) the attorney he retained did not represent him adequately.

Our precedents dealing with the showing which must be made to jus-

---

[1] See, Carafas v. LaVallee, 391 U. S. 234, 88 S. Ct. 1556, 20 L. ed. (2d) 554.

[2] Minn. St. 590.01 to 590.06.

tify vacating a plea of guilty are reviewed in Chapman v. State, 282 Minn. 13, 162 N. W. (2d) 698, supplemented by State v. Linehan, 282 Minn. 254, 164 N. W. (2d) 616.[3] It must be made to appear that manifest injustice will result from failure to vacate the plea.

■ We do not decide whether the statements secured from petitioner were obtained as the result of an illegal confinement and in circumvention of the attorney then representing petitioner.[4] The record is clear that the inculpatory statements taken by the police were not to be used against petitioner unless he signed them after consultation with his attorney. Upon advice of counsel, petitioner did not sign the statements. We do not accept petitioner's present assertion that he believed that these statements could or would have been offered and received against him at the time of trial and that he entered his plea of guilty because of this fact in view of this testimony:

"Q. Did you make a statement that was transcribed by a reporter?

"A. Yes.

"Q. But you didn't sign it?

"A. No.

\* \* \* \* \*

"Q. You then \* \* \* gave your statement to the police?

"A. That's right. They stated they would not use it or anything unless it was approved—until after the attorney seen it.

"Q. Until what?

"A. Until after the attorney had seen it and viewed it. They wouldn't make it a part of the record or anything else.

\* \* \* \* \*

"THE COURT: He [counsel] told you not to sign it, didn't he?

---

[3] United States ex rel. Ross v. McMann and United States ex rel. Dash v. Follette, 409 F. (2d) 1016, filed February 26, 1969, by the United States Court of Appeals for the Second Circuit is the most recent decision of interest concerning the problem.

[4] As to prolonged detention, see Mallory v. United States, 354 U. S. 449, 77 S. Ct. 1356, 1 L. ed. (2d) 1479.

As to circumvention of counsel, see Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. ed. (2d) 246.

"THE PETITIONER: Yes.

"THE COURT: And you didn't sign it?

"THE PETITIONER: No."

■ The incriminating evidence obtained from petitioner's car was secured pursuant to a search warrant. This being so, there would have been no basis for rejecting the evidence which was the fruit of the search. Petitioner was apparently present at the time this search was made. He claimed at the habeas corpus hearing that it appeared to him that someone had searched the car previously, the implication being that the police officers had done so and had obtained the search warrant only because of discoveries then made. The trial court was not required to accept this belated claim on the part of the petitioner, particularly in view of the fact that before the search warrant was secured he had apparently given an oral consent to inspection of the vehicle.

■ Successful prosecution of the charge of burglary in the third degree did not depend upon the uncorroborated testimony of an accomplice. The materials discovered in petitioner's automobile during the course of the search made in his presence by police officers acting pursuant to a search warrant would have been sufficient corroboration under our statute.[5]

■ The claim of petitioner that he was threatened with a Federal prosecution by Minneapolis police officers if he persisted in his plea of not guilty to the charge of burglary in the third degree does not have adequate support in the record.

■ The present claim of inadequacy of counsel is inconsistent with petitioner's prior testimony and with the results achieved. For example, on October 1, 1965, petitioner testified with respect to his counsel that he did not "want to reflect on him as a competent attorney as such. I think possibly it may have been my fault—I never asked him for opinions on this. As I stated before, * * * I did want to get the thing over with." Furthermore, the limited sentence originally imposed refutes the claim of incompetency. Petitioner had come into the hands of the police

---

[5] See State ex rel. Ogg v. Tahash, 273 Minn. 187, 140 N. W. (2d) 692; State v. Mathiasen, 267 Minn. 393, 127 N. W. (2d) 534.

after violating a stay of execution of a prior sentence. Although we do not know all the details of the case which would have been submitted against him by the state in the event of trial of the burglary charge, the fact that a part of the loot was found in his automobile, and that "an accomplice" was apparently prepared to testify against him, does appear from the record before us. He was exposed to imprisonment in the State Prison for a term of up to 5 years. Minn. St. 609.52, subd. 3(2). Although he was given an indeterminate sentence according to law, execution of the sentence was stayed upon condition that he spend 1 year in the Hennepin County workhouse. This result bespeaks competent legal representation. The fact that he was later compelled to serve the stayed sentence because he left the state in June 1963 was not the fault of his attorney.

■ A defendant who interposes a plea of guilty must be provided with an opportunity to present mitigating facts, circumstances, and arguments to the sentencing court. State ex rel. Searles v. Tahash, 271 Minn. 304, 136 N. W. (2d) 70. However, in this case a full presentence investigation was made and was available to the court at the time sentence was imposed. Further, the record shows that defendant's attorney was invited to make a statement in behalf of his client before sentence was imposed and that a discussion off the record then followed. Petitioner himself testified at the hearing on his motion to set aside his conviction and vacate his plea of guilty:

"Q. You knew, did you not, Mr. Thunstrom, that Mr. Serstock, in your behalf, had sought the leniency of this Court in imposing the ultimate sentence upon you?

"A. Yes, I did.

"Q. As a matter of fact, you know of your own knowledge that he has seen this Court a number of times explaining your position and asking for leniency?

"A. Yes, sir.

"Q. And isn't it a fact that when, in fact, the Court did finally * * * sentence you to an indeterminate term and stayed that sentence on condition you serve a year in the Workhouse to follow the year which Judge

Jaroscak had previously given you, that he did, in fact, extend the ultimate amount of leniency to you?

"A. Yes, sir."

Under the circumstances, we do not feel that prejudice has been demonstrated. See, State ex rel. Geiselhart v. Tahash, 274 Minn. 464, 144 N. W. (2d) 354; State ex rel. Napiwoski v. Tahash, 278 Minn. 56, 153 N. W. (2d) 138; State ex rel. Krahn v. Tahash, 274 Minn. 567, 144 N. W. (2d) 262.

■ Minn. St. 609.14 provides in part:

"Subdivision 1. When it appears that the defendant has violated any of the conditions of his probation or has otherwise been guilty of misconduct which warrants the imposing or execution of sentence, the court may without notice revoke the stay thereof and probation and direct that the defendant be taken into immediate custody.

"Subd. 2. The defendant shall thereupon be notified in writing and in such manner as the court directs of the grounds alleged to exist for revocation of the stay of imposition or execution of sentence. If such grounds are brought in issue by the defendant, a summary hearing shall be held thereon at which he is entitled to be heard and to be represented by counsel.

\* \* \* \* \*

"Subd. 4. If none of such grounds are found to exist, the defendant shall be restored to his liberty under the previous order of the court."

For purposes of discussion, we assume petitioner asked but was not granted a revocation hearing. While petitioner was in custody but before he was committed to the State Prison at Stillwater, a hearing was held in the Hennepin County District Court on October 1, 1965, on his motion to vacate his plea of guilty. At this hearing neither petitioner nor his legal counsel questioned the propriety of the court's action in vacating the stay of execution of sentence. We feel justified in assuming the reasons for the revocation were considered so apparent and indisputable that notice would have been superfluous and a contest fruitless. Having accepted commitment for 1 year to the workhouse in lieu of a sentence to Stillwater for 5 years, petitioner left the workhouse without explana-

tion after less than 6 months had elapsed, returning to Minnesota 2 years later only because he was arrested and compelled to do so. We cannot conceive of any useful purpose that would be served by affording petitioner an opportunity to be heard with respect to the July 22, 1965, order at this late date.

Affirmed.