**STATE of Minnesota, Respondent,**

v.

**Richard J. MARTI, Appellant.**

No. C2-84-1787.

Court of Appeals of Minnesota.

Aug. 13, 1985.

Review Denied Oct. 11, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This is an appeal by a criminal defendant who claims that in 1982 a probation hearing was held untimely and that even though probation was continued, a subsequent revocation of probation in 1984 was void as in violation of his due process rights. He also claims the trial court abused its discretion in revoking probation. We affirm.

## FACTS

In 1976 appellant Richard Marti entered an apartment and forced acts of sexual conduct upon two women. He pleaded guilty to criminal sexual conduct in the first degree in Hennepin County District Court and was sentenced in January 1977 to prison. Execution was stayed for five years and appellant was placed on probation. In October 1978 he was arrested for sexual assault on a woman in North Dakota and he pleaded guilty. He was sentenced to 11 years imprisonment, four of which were suspended. In the meantime Hennepin County authorities issued an arrest and detention order and placed a hold on appellant. On July 14, 1982 appellant was paroled from North Dakota.

Subsequently a probation revocation hearing was held in Hennepin County. Appellant admitted violating the terms of probation by committing the offense in North Dakota. The trial court continued probation for five years and ordered appellant to enter and complete the intensive treatment program for sexual aggressives (I.T.P.S.A.) at St. Peter State Hospital as a condition of probation. Appellant did not challenge the timing or disposition at this 1982 hearing.

Appellant completed seven of the 15 required steps of the program but was discharged from the program on February 29, 1984. A probation revocation hearing was held May 14, July 23 and 24, 1984. Sometime between May and July 1984 appellant, while out on bond, entered the Damascus Way, a halfway house.

At the revocation hearing Michael Ruddy, appellant's probation officer, testified that he considered appellant dangerous to women in public. He did not believe Damascus Way was an appropriate treatment center. Richard Seely, Director of I.T.P. S.A., described how appellant was unable to complete the program to allow him to return to the community and felt he was repeating a pattern of behavior he had shown in other programs. (Appellant received treatment at St. Cloud Veterans Hospital in 1976 and at prison in North Dakota). Seely testified appellant was using his religious beliefs to deflect discussion from his behavior and that appellant was not applying intellectual insight into his own problems. Pam Bidelman, a small group leader at I.T.P.S.A. and Bruce Hawkinson, a staff psychologist, both testified appellant was not internalizing principles but was deflecting treatment. Hawkinson testified appellant should not go to a less secure treatment center.

Following the lengthy hearing the trial court found appellant violated the terms of probation, revoked the stay of execution and committed him to the custody of the Commissioner of Corrections. The trial court stated:

> It seems to me that what you are asking me to do is take further chances with the defendant.
>
> I took one chance with him and he raped and brutalized a woman in North Dakota. I took another chance and sent him to St. Peter and for whatever reason, it didn't work out for him and I was hopeful that it would, and at this point I am unwilling to take any further chances.
>
> I will say that it is not a case of me putting down the Damascus Way program and to say that it is not a good program.
>
> I suppose it's a question of what a good program is for the individual involved and it's not a case of me saying that everything that was done at St. Peter is right, but my own opinion is that I would be foolish in view of the record of Mr. Marti to take any further chances with

him and I am, therefore, going to revoke his probation at this time.

## ISSUES

1. Did the trial court's failure to hold a revocation hearing immediately in response to appellant's 1979 North Dakota conviction deny appellant due process?

2. Did the trial court abuse its discretion in revoking probation?

3. Is appellant entitled to jail credit for time spent in treatment at St. Peter State Hospital?

## ANALYSIS

### I.

Appellant contends that he is entitled to immediate discharge because a prompt revocation hearing following his 1979 North Dakota conviction was not held. Under appellant's theory the 1982 extension of probation was untimely and thus the subsequent revocation in 1984 was improper and void.

Appellant unquestionably had a due process right to a probation hearing, tendered within a reasonable period of time. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). It is conceded that the North Dakota rape was a violation of his probation.

In *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the petitioner was on parole after committing a rape. While on parole, he killed two persons and pleaded guilty to manslaughter and second degree murder. All of his offenses were federal offenses. The United States Board of Parole issued, but did not execute a parole violation warrant. Petitioner requested the board to execute the warrant immediately so that his earlier rape conviction could run concurrently with his homicide sentences. The board replied that it intended to execute the warrant only upon his release from his second sentence. Petitioner then sought habeas corpus relief, seeking dismissal of the parole violator warrant because he had been denied a

prompt hearing at which the pending parole revocation issues could be aired.

In rejecting petitioner's argument the United States Supreme Court held that there is no requirement for an immediate hearing. The Supreme Court cited practical reasons for this—the reviewing authority (in the case of appellant here, the trial court) must be allowed to make its revocation decision when "most relevant and most accurate—at the expiration of the parolee's intervening sentence." *Id.* at 89, 97 S.Ct. at 280.

Here, it is also relevant that appellant makes no claim that in 1982 he challenged the probation hearing as untimely. *See State ex rel. Thurnstrom v. Tahash*, 283 Minn. 239, 167 N.W.2d 139 (1969). We have previously indicated our general disfavor where a defendant does not challenge probation, is placed in a treatment program and subsequently fails in that program and then protests after probation is subsequently revoked. *See, State v. Hemmings*, 360 N.W.2d 672, (Minn.Ct.App.1985). Further, in 1982 appellant was granted an extension of probation; in effect he was given a "second chance" and he failed. The petitioner in *Moody*, did not enjoy such leniency. In addition, account must be made that different jurisdictions (North Dakota and Minnesota) with differing sentencing policies and practices were applicable in this case.[1] It is not at all likely that even if appellant had a probationary hearing in Minnesota immediately upon his conviction for his North Dakota offenses he would have benefited more than the disposition which was rendered in 1982. Appellant offers no support for his argument that he was denied the opportunity to elect to serve his sentence concurrently. Even under the Minnesota Sentencing Guidelines, which do not apply, it would not have been a departure to impose consecutive sentencing. Minnesota Sentencing Guidelines II.F. Just as "the loss of liberty as a parole violator does not occur until the

parolee is taken into custody under the warrant," *Moody*, 429 U.S. at 87, 97 S.Ct. at 279, here appellant suffered no loss of liberty interest by remaining in the North Dakota prison while a Hennepin County arrest and detention order was placed on him. As in *Moody* appellant was not deprived of any constitutionally protected rights because of the failure to hold a probation hearing until 1982.

 Even if error existed in not conducting a hearing more promptly, we do not believe the appropriate remedy is immediate discharge from prison. Appellant's present incarceration results from the revocation in 1984, not from any action in 1982. Appellant's alternative request that he is entitled to jail credit for all time spent in North Dakota is without merit. Appellant was given credit for time spent in North Dakota in connection with the Minnesota offense. *State v. Dulski*, 363 N.W.2d 307 (Minn.1985), does not require appellant be given credit from the date of his arrest in North Dakota to the date of his parole. His confinement in North Dakota arose out of his conviction in *that* state for rape.

## II.

 The trial court has broad discretion in determining whether there is sufficient evidence to revoke probation. *State v. Austin*, 295 N.W.2d 246 (Minn.1980). *State v. Hemmings*, 360 N.W.2d 672 (Minn. Ct.App.1985); *State v. Spanyard*, 358 N.W.2d 125 (Minn.Ct.App.1984), *pet. for rev. denied*, Feb. 27, 1985.

Appellant's probation was revoked because he failed to complete the I.T.P.S.A. A review of the 1984 revocation hearing shows that testimony from the various treatment professionals indicated appellant needed a secure treatment setting. Evidence showed that appellant did not want to stay within the treatment programs at I.T.P.S.A. and indicates that appellant's

---

1. The lack of a prompt demand, the different jurisdictions, the "second chance" and the fact that consecutive sentencing would not have

been a departure distinguishes this case from *State v. Compton*, 340 N.W.2d 358 (Minn.Ct.App. 1983).

failure to complete the I.T.P.S.A. was willful.

Appellant argues that because he progressed to step seven of the program, found the program intolerant to his religion, and located an outpatient program, the revocation was improper. The trial court rejected these arguments as unsupported by the record and we agree.

The record shows appellant had been evaluated prior to entry in the program and had been exposed to significant previous treatment efforts. It was thus not surprising appellant would progress rapidly through steps 1–5 which involved gainful insight into principles of the program and of the person's own problems. (Steps 6–10 involve taking individual and group leadership responsibility for applying the program principles to gain a positive change in behavior. Steps 11–15 involve carrying forward these changes during a phased re-entry into society). Testimony showed appellant never "internalized" the positive changes in behavior.

Appellant suggested at the hearing and again on appeal that the I.T.P.S.A. would not accommodate his traditional religious beliefs. Testimony showed the treatment professionals believed appellant was using his particular view of his religious beliefs to deflect discussion of his own sexual behavior. The program requires discussion to recondition aggressive sexual behavior.

The trial court rejected appellant's suggestion to use Damascus Way, a halfway house with a sexual treatment program length of approximately three months. Testimony showed a non-secure setting was not suitable for appellant.

In sum, the record amply supports the trial court's discretionary decision to revoke probation.

### III.

We have already held that one is not entitled to jail credit for time spent in treatment at St. Peter State Hospital. *State v. Peterson,* 359 N.W.2d 708 (Minn. Ct.App.1984), *pet. for rev. denied,* (Minn. March 13, 1985).

### DECISION

Appellant had no right to a probation hearing until after he was taken into custody as a parole violator. The trial court did not abuse its discretion in revoking probation and appellant is not entitled to jail credit for time spent at St. Peter State Hospital for treatment. Affirmed.