STATE of Minnesota, Respondent,

v.

James M. MOOT, Appellant.

No. C2–86–1227.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Review Denied Feb. 13, 1987.

Hubert H. Humphrey, III, Minnesota Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan Andrews, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

James Moot appeals from an order vacating a stay of execution of his 38-month sentence for burglary. He contends the trial court abused its discretion by revoking his probation. We affirm.

## FACTS

On January 11, 1985, appellant was charged with second degree burglary for breaking into a Minnetonka residence and taking several items. He pleaded guilty to that charge and the trial court stayed execution of the presumptive 38 month prison sentence, placed appellant on probation for five years, and ordered him to serve one year in the county jail. The trial court recited the conditions of appellant's probation:

> It is further ordered that you obey all laws, federal, state and local, that you obey all the reasonable rules and regulations imposed upon you by the Director of Court Services. * * * When it is deemed that you are serious about doing something about your chemical dependency problem, Court Services has permission to transfer you on a furlough basis to whatever facility they deem appropriate in your particular case.

A written order provided that appellant was to:

> Enter into and successfully complete chemical dependency treatment and any and all aftercare as recommended by the Department of Court Services.

On September 24, 1985, appellant was furloughed to the Prodigal House treatment program. The furlough order stated he was to successfully complete the program, and that failure to complete treatment or other violation of probation would result in his return to jail. On March 26, 1986, Prodigal House terminated appellant "because he refused to comply with the program and participate in his recovery."

At a probation revocation hearing, his probation officer, Marilyn Sanchez, testi-

fied that a report from Prodigal House indicated appellant stopped following his treatment plan and Prodigal House refused to take him back into their program. Appellant denied that he violated his probation and described his experience at Prodigal House:

Well, the reason why I feel that I haven't violated it is because the program is six months long and I went through five and a half months of it. I felt I did have a lot of change. I made a lot of changes there. I got a job and the job just called for too much of my time. They didn't tell me I couldn't work over 40 hours until after I got the job. It interfered with some of the stipulations of the program by that time and—well, to be honest with you, I did get a little frustrated with the program. I had some negative feelings toward the staff that were requiring that I do everything they want me to do and my job, too, and it was like a big burden on me, you know, to do all that. I couldn't handle it all at once.

The trial court found appellant violated his probation:

I told you to follow all the reasonable rules and regulations of Court Services. All you had to do is call Mrs. Sanchez and sit down with her, chat with her, keep your appointments on time, do the things you are supposed to do. I gave you a break on April 8, 1985. You were supposed to be sent directly to prison under the Minnesota Sentencing Guidelines. You asked for help. And I gave you that opportunity and you have not successfully completed it.

This Court finds you in violation of your probation rules and hereby orders execution of the sentence issued April 8, 1985.

Appellant's 38 month sentence was executed with jail credit for time already served.

## ISSUE

Did the trial court abuse its discretion when it revoked appellant's probation?

## ANALYSIS

The trial court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion. *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn.1980). In order to revoke probation, a trial court must determine there is clear and convincing evidence that a defendant violated the conditions of probation and that probation should therefore be revoked. *See* Minn.R.Crim.P. 27.04, subd. 2(1)(b).

■ The trial court must make three findings before revoking probation: (1) designate a specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that the need for confinement outweighs the policies favoring probation. *Austin*, 295 N.W.2d at 250. The trial court acts as factfinder in weighing the credibility of the witnesses. *See State v. Spanyard*, 358 N.W.2d 125, 127 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Feb. 27, 1985) (citing *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980)).

■ If a probation violation is found, the trial court must then consider several policy factors and determine whether revocation is the proper result:

In some cases, policy considerations may require that probation not be revoked even though the facts may allow it * * *. The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed. There must be a balancing of the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety. * * * The decision to revoke cannot be "a reflexive reaction to an accumulation of technical violations" but requires a showing that the "offender's behavior demonstrates that he or she 'cannot be counted on to avoid antisocial activity.'" * * * Trial judges must take care that the decision

**24**

to revoke is based on sound judgment and not just their will.

*Austin,* 295 N.W.2d at 250–51 (citations omitted).

A trial court's revocation of probation was affirmed where a defendant's response to treatment was poor, he was considered unamenable to treatment in another program, and the decision was supported by testimony from a probation officer and two experts. *See State v. Hemmings,* 371 N.W.2d 44, 47 (Minn.Ct.App.1985); *see also State v. Marti,* 372 N.W.2d 755 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985).

■ Here, the record is clear that at sentencing the trial judge made a downward dispositional departure for the sole reason of affording appellant one last opportunity to succeed in treatment for chemical dependency. The appellant was told on the record and in writing that he must successfully complete treatment and all recommended aftercare. Appellant had been through treatment before so he was aware what was required of him. He admitted that he took a job which interfered with his treatment schedule and that he was frustrated with the program. The court issued written findings that his actions constituted a refusal to comply with the program and participate in his recovery. These findings are supported by clear and convincing evidence.

■ Although the court did not specifically find that the need for confinement outweighs the policies favoring probation, the court made it clear that the presumptive sentence was commitment to prison and the downward departure was *solely* to permit one last attempt to succeed at treatment. Appellant understood that and refused to comply. Under these conditions, the requirements of *Austin* are met.

### DECISION

The trial court's revocation of appellant's probation is affirmed.