**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-2187**

State of Minnesota,
Respondent,

vs.

August Latimothy Fleming,
Appellant.

**Filed September 8, 2015**
**Affirmed**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CR-13-431

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Chutich, Judge; and Klaphake, Judge.[*]

## S Y L L A B U S

Under the plain language of Minn. Stat. § 244.10, subd. 5a(b) (2012), an aggravated sentence may be based on any aggravating factor arising from the same course of conduct as the sentencing offense.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

**LARKIN**, Judge

Appellant challenges his aggravated sentence for possessing a firearm as an ineligible person, arguing that the district court erred by basing its upward durational sentencing departure on an impermissible aggravating factor. Appellant also challenges the district court's decision to revoke his probation, arguing that the district court failed to make a necessary finding and that the evidence does not support revocation. Because the aggravating departure factor on which the district court relied is permissible under Minn. Stat. § 244.10, subd. 5a(b), and because the district court did not err in revoking probation, we affirm.

## FACTS

Respondent State of Minnesota charged appellant August Latimothy Fleming with possessing a firearm as an ineligible person under Minn. Stat. § 624.713, subd. 1(2) (2012), and second-degree assault under Minn. Stat. § 609.222, subd. 1 (2012). The complaint alleged that on October 3, 2012, Fleming was cut with a knife during a dispute on a basketball court at Folwell Park in Minneapolis and that Fleming responded by reaching into a backpack, retrieving a gun, and firing it six times. Many adults and children were present when Fleming fired the gun. Fleming pleaded guilty to both charges and testified regarding facts that would establish a basis for an aggravated sentence.

The district court accepted Fleming's guilty plea and convicted him of the offenses. At the sentencing hearing, Fleming requested downward dispositional and

2

durational departures from the 60- and 36-month presumptive prison sentences for the firearm-possession and assault convictions.[1]  The state opposed a dispositional departure and argued for an upward durational departure.

The district court granted Fleming's request for a downward dispositional departure, as well as the state's request for an upward durational departure.  The district court sentenced Fleming to serve 90 months in prison for the firearm-possession conviction, stayed execution of the sentence for eight years, and placed Fleming on probation.  The district court sentenced Fleming to serve a concurrent 36-month prison term for the assault conviction and stayed execution of that sentence for eight years.

The district court explained that the dispositional departure was based, in part, on the following circumstances:  the victim was the initial aggressor and Fleming had an imperfect self-defense claim.  The district court explained that the upward durational departure was based on the "unique seriousness" of the offense.  The district court's memorandum supporting its sentencing order states:

> A trial court may impose a sentence above the presumptive range (or the statutorily mandated minimum sentence) if the trial court finds a defendant's actions represent a greater than normal danger to the safety of other people.
> . . . .

---

[1] The sentences were statutorily mandated.  *See* Minn. Stat. § 609.11, subd. 5(a) (providing that a defendant who used a firearm to commit second-degree assault "shall be committed to the commissioner of corrections for not less than three years"), (b) (providing that a defendant convicted of violating section 624.713, subdivision 1(2), "shall be committed to the commissioner of corrections for not less than five years") (2012); Minn. Sent. Guidelines 2.E.1-2 (2012) (explaining how to determine the presumptive sentence when an offense triggers application of a statutory mandatory minimum sentence).

> Going back to the caselaw and taking into account the general nature of the aggravating factors that may be considered, this court finds the danger to the general public—those innocent children, families, and community members in the area of Folwell Park—cannot be overstated. Bullets kill and maim. Bullets do not know their target, and can kill or maim unintended victims. Mr. Fleming's actions threatened to harm or kill at least six people. And, as is readily apparent, his actions negatively impacted the lives of hundreds[, and] added to the steady drumbeat of negative reports of crime in North Minneapolis. Nothing good came out of Mr. Fleming's actions.

(Quotation omitted.) The district court imposed several probationary conditions, including "Do not commit any new offense," "Stay at least one block away from Folwell Park in Minneapolis," and "Make a good-faith effort to obtain or maintain employment . . . and/or pursue an educational program."

In May 2014, the probation department filed a report alleging that Fleming had violated certain conditions of probation. The department filed an updated report in July, alleging, among other things, that Fleming violated the geographic restriction by being arrested at a location adjacent to Folwell Park, by having 58 grams of suspected marijuana in his backpack at the time of his arrest, by being terminated from his job, and by failing to provide verification of searches for other employment or educational opportunities.

The district court held a three-day probation-violation hearing and heard testimony from several witnesses. The district court found that Fleming violated the following probationary conditions: that he stay outside a one-block radius of Folwell Park, that he make a good-faith effort to obtain or maintain employment or pursue an educational

4

program, and that he remain law abiding. The district court found that the probation violations were supported by clear-and-convincing evidence; that the violations were knowing, intentional, and willful; and that the need for confinement outweighed the policies favoring probation. The district court identified public safety as a "large concern." It also stated:

> What just boggles my mind is how you could go across the street from Folwell Park and as you do it with drugs in your bag. I don't buy for an instant that you thought it was okay to walk through the park because nobody would know you except for up at the community center. . . . You know your underlying offense impacted hundreds of people at the park . . . .

The district court further stated:

> [H]ad you committed these infractions and offenses while you were on conditional release in the last case, I wouldn't have departed. . . .
>
> I still think you've got hope and promise, but I can't ignore the violations. And so I do feel that the policies of Minnesota which favor probation need to give way in this case . . . .

The district court revoked 60 months of Fleming's 90-month firearm-possession sentence, staying execution of the remaining 30 months of that sentence. However, the district court stayed the revocation to allow the parties to submit written arguments regarding whether it had authority to revoke only a portion of Fleming's firearm-possession sentence. The district court also requested arguments regarding its authority to revoke the 36-month assault sentence and continue the stay of execution on the 90-month firearm-possession sentence. The district court ultimately concluded that

5

revocation of less than 60 months of Fleming's stayed prison time would be insufficient to address the probation violations. The district court's probation-revocation order explains:

> The court finds the need for confinement outweighs the policies favoring probation. Mr. Fleming was given a significant opportunity by the court to rehabilitate his behavior. Instead, Mr. Fleming was found with 58 grams of marijuana, next to Folwell Park. Given the programming he completed while incarcerated, and the near exhaustion of relevant programming opportunities, he is not amenable to probation and cannot be relied on to avoid antisocial activity.
> . . . .
> As the court stated [earlier], a revocation of less than 60 months of the sentence would not be enough of a sanction for Mr. Fleming's proven probation violations. As the court cannot revoke only a portion of a stayed prison sentence while leaving the remainder stayed, and a revocation of less than 60 months would be an insufficient sanction, the court is forced to conclude that revocation of the full 90-month stayed sentence is the correct course of action.

The district court revoked the 90-month firearm-possession sentence and, following a request by Fleming, executed the concurrent 36-month stayed assault sentence. Fleming appeals his sentence and the district court's decision to revoke his probation.

## ISSUES

I.  Did the district court rely on an impermissible aggravating factor when ordering an upward durational sentencing departure for Fleming's firearm-possession conviction?

II.  Did the district court err in revoking probation?

6

# ANALYSIS

## I.

Fleming contends that the district court erred by ordering an upward durational sentencing departure for his conviction of possessing a firearm as an ineligible person. A district court must order the presumptive sentence specified in the sentencing guidelines unless there are "identifiable, substantial, and compelling circumstances" to warrant an upward departure from the presumptive sentence. Minn. Sent. Guidelines 2.D.1 (2012). Substantial and compelling circumstances demonstrate "that the defendant's conduct was significantly more or less serious than that typically involved in the commission of the offense in question." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009).

A district court's decision to depart from the presumptive guidelines sentence is reviewed for an abuse of discretion. *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). "If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed. But if the district court's reasons for departure are improper or inadequate, the departure will be reversed." *Edwards*, 774 N.W.2d at 601 (quotation omitted). Whether a particular reason for an upward departure is permissible is a question of law, which we review de novo. *State v. Grampre*, 766 N.W.2d 347, 350 (Minn. App. 2009), *review denied* (Minn. Aug. 26, 2009). If the reasons given by the district court justify the departure, the departure will be affirmed. *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985).

A sentencing court may depart upwardly when "the offense was particularly serious and represented a greater than normal danger to the safety of other people." *State*

7

*v. McClay*, 310 N.W.2d 683, 685 (Minn. 1981). An offense may be more serious than a typical crime when a large number of people are placed at risk or more people are put in fear than in the typical case. *State v. Mitjans*, 408 N.W.2d 824, 834 (Minn. 1987). The supreme court has "repeatedly held that the risk to bystanders is an appropriate factor for courts to consider when determining the seriousness of a crime." *Edwards*, 774 N.W.2d at 607.

The district court in this case granted an upward durational departure because Fleming's offense created a greater-than-normal danger to the safety of other people. The district court stated that "the manner in which Mr. Fleming violated the prohibited-person statute was more egregious than the typical such case, which normally involves simple possession" and that "the large number of potential victims . . . [was a] real and significant danger as a result of his firing the handgun six times in a public park during the height of its use that day." The district court concluded that an upward departure was justified by the "unique seriousness" of Fleming's conduct and "the danger to the general public," which the district court said "cannot be overstated."

Fleming does not contest that his conduct at Folwell Park created a greater-than-normal danger to the safety of other people. Instead, Fleming argues that the "aggravated durational departure was based entirely on the nature of the assault offense." Fleming further argues that conduct underlying one conviction for which a defendant was sentenced cannot be used to support an upward sentencing departure for a separate conviction. *See State v. McIntosh*, 641 N.W.2d 3, 9 (Minn. 2002) (citing *State v. Spaeth*,

8

552 N.W.2d 187, 196 (Minn. 1996), for the rule that a "court may not rely on conduct underlying one conviction to support a sentencing departure for a separate conviction").

Fleming's reliance on the caselaw rule that conduct underlying one conviction cannot be used to support an upward sentencing departure for a separate conviction is unavailing in light of Minn. Stat. § 244.10 subd. 5a(b), which took effect on August 1, 2009, and applies to crimes committed on or after that date. 2009 Minn. Laws ch. 59, art. 5, § 8, at 367. The statute provides, "Notwithstanding section 609.04 or 609.035, or other law to the contrary, when a court sentences an offender for a felony conviction, the court may order an aggravated sentence beyond the range specified in the sentencing guidelines grid *based on any aggravating factor arising from the same course of conduct*." Minn. Stat. § 244.10 subd. 5a(b) (emphasis added).

"If the Legislature's intent is clear from [a] statute's plain and unambiguous language, then we interpret the statute according to its plain meaning without resorting to the canons of statutory construction." *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). The parties agree, as do we, that section 244.10, subdivision 5a(b), is unambiguous. However, Fleming argues that the statute only allows a departure based on overlapping factors arising from the same course of conduct in cases involving uncharged and unsentenced offenses, but not in this case, where multiple offenses were sentenced. The plain language of section 244.10, subdivision 5a(b), does not include such a limitation.

Moreover, although the Minnesota Supreme Court has not directly reviewed an upward sentencing departure under section 244.10, subdivision 5a(b), its recent decisions

are consistent with the plain language of the statute.[2] For example, in *Edwards*, the supreme court held that

> when a defendant is convicted of several offenses involving multiple victims arising out of a single behavioral incident, a sentencing court may use 'overlapping' facts of those offenses as the basis for an upward departure, provided that those facts show that the defendant committed the offense being sentenced in a particularly serious way.

774 N.W.2d at 606-07. The supreme court did not apply section 244.10, subdivision 5a(b), because the crime at issue occurred before August 1, 2009. *Id.* at 608 n.10. However, the supreme court noted that its holding was "consistent" with section 244.10, subdivision 5a(b). *Id.*

And more recently in *Hicks*, the supreme court held that "a district court may base an upward durational departure on the defendant's concealment of a victim's body when sentencing a defendant for second-degree unintentional murder" even though "the facts of concealment of a victim's body may be part of a single behavioral incident that relate to both second-degree unintentional murder and [the uncharged offense of] interfering with a dead body." 864 N.W.2d at 162. Once again, the supreme court did not apply section 244.10, subdivision 5a(b), because the crime at issue occurred before August 1, 2009. *Id.* at 162 n.7. However, the supreme court noted that section 244.10, subdivision 5a(b), "has limited the impact" of caselaw that had restricted the grounds on which a departure could be based. *See id.* (referring to *State v. Jackson*, 749 N.W.2d 353, 357 (Minn. 2008), in which the supreme court concluded that "[a] departure cannot be based

---

[2] We are unaware of any precedential cases reviewing an upward sentencing departure under Minn. Stat. § 244.10, subd. 5a(b).

on uncharged criminal conduct"); *see also Tucker v. State*, 799 N.W.2d 583, 593 n.1 (Minn. 2011) (Anderson, J., concurring) (noting that "the Legislature statutorily overruled the restriction adopted in *Jackson*, in 2009, when the Legislature adopted Minn. Stat. § 244.10 subd. 5a(b)").

Given the unambiguous language of section 244.10, subdivision 5a(b), and the supreme court's recognition that the statute supplants portions of Minnesota's sentencing-departure jurisprudence, we apply the statute's plain language when assessing the validity of the departure in this case.

Section 244.10, subdivision 5a(b), authorizes a departure based on any aggravating factor that arises from the same course of conduct as the felony sentencing offense. In this case, the district court ordered an aggravated sentence for Fleming's firearm-possession conviction because the offense created a greater-than-normal danger to the safety of other people. The relevant facts are undisputed and support the departure ground on which the district court relied: Fleming did not merely possess a firearm; he fired the gun six times on a basketball court in Folwell Park, endangering several adults and children who were present in the park. It is undisputed that the greater-than-normal danger and Fleming's firearm-possession offense arose from the same course of conduct. Thus, the departure ground on which the district court relied is permissible under the plain language of Minn. Stat. § 244.10, subd. 5a(b).

Although we base our holding in this case on section 244.10, subdivision 5a(b), we nonetheless note that the departure ground in this case is also permissible under this court's precedent. In *Grampre*, which was decided before the effective date of section

11

244.10, subdivision 5a(b), this court recognized an exception to the rule that conduct underlying one conviction cannot be relied on to support a departure on a sentence for a separate conviction. 766 N.W.2d at 351-52. We reasoned that the rule is justified in part by Minn. Stat. § 609.035, which prohibits cumulative punishment for conduct that constitutes more than one offense. *Id*. at 351. We concluded that because an exception to the statutory prohibition against multiple punishment applied in *Grampre*, the rule prohibiting a departure based on conduct underlying another conviction was inapplicable. *Id*. at 352. Specifically, we held that "[p]ursuant to Minn. Stat. § 609.035, subd. 6 (2006), if a defendant is convicted of committing criminal sexual conduct with force or violence, the district court may impose an upward departure based on evidence that also supports a conviction of another offense," notwithstanding the rule that conduct underlying one conviction cannot be relied on to support departure on a sentence for a separate conviction. *Id*. at 348.

Like *Grampre*, this case involves an exception to the statutory prohibition against cumulative punishment. The exception provides that "[n]otwithstanding section 609.04, a prosecution for or conviction of a violation of section 609.165 or 624.713, subdivision 1, clause (2), is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct." Minn. Stat. § 609.035, subd. 3 (2012). Because Fleming was convicted under section 624.713, subdivision 1(2), the exception to the statutory prohibition against cumulative punishment under section 609.035, subdivision 3, applies. And because an exception to the statutory prohibition against

12

cumulative punishment applies, the rule prohibiting a departure based on conduct underlying another conviction is inapplicable. *See Grampre*, 766 N.W.2d at 351-52.

We now turn to Fleming's three arguments in support of reversal. First, Fleming argues that the greater-than-normal-danger aggravating factor in this case was based on his act of firing the gun, which was "entirely unrelated" to the firearm-possession offense. Fleming therefore concludes that his act of firing the gun cannot support the departure. *See Edwards*, 774 N.W.2d at 603 (noting "the rule that facts that do not relate to the offense being sentenced do not (and cannot) show that the offense being sentenced was committed in a particularly serious way"). But under section 244.10, subdivision 5a(b), the relevant inquiry is whether the aggravating factor arises from the same course of conduct as the sentencing offense. That statutory standard is indisputably satisfied here.

Moreover, Fleming fails to recognize that a permissible departure factor may "relate to" more than one offense. For example, in *Hicks*, the supreme court stated that "the facts of concealment of a victim's body may be part of a single behavioral incident that relate to *both* second-degree unintentional murder and interfering with a dead body." 864 N.W.2d at 162 (emphasis added). The supreme court noted that "in *Edwards* we rejected the defendant's argument that our case law expressly bars the district court from considering facts to depart simply because those facts related to another offense that arose out of the same behavioral incident." *Id.* (quotation and alterations omitted). The supreme court reiterated that "facts from a single behavioral incident that relate to multiple offenses may be relied on to support a durational departure if those facts show

13

that the defendant committed the offense being sentenced in a particularly serious way." *Id.* (quotation omitted). The supreme court's decision in *Hicks* undercuts Fleming's argument that his act of firing the gun does not relate to his act of possessing the gun. If the act of concealing a murder victim's body relates to the underlying murder, we fail to see why Fleming's act of firing the gun does not relate to his underlying possession of the gun.

Next, Fleming argues that the district court "failed to take into account the separate mitigating factors that [it] pronounced." Fleming notes that in granting his request for a dispositional departure, the district court reasoned that Fleming was not the initial aggressor and that he had an imperfect claim of self-defense. *See State v. Behl*, 573 N.W.2d 711, 712 (Minn. App. 1998) ("In justification of departure from a presumptive sentence under the sentencing guidelines, offense-related factors support durational or dispositional departure but offender-related factors relate only to dispositional departure."), *review denied* (Minn. Mar. 19, 1998). Fleming argues that those offense-related factors "would indicate that if any durational departure were appropriate, it would be downward."

The district court clearly was aware of the offense-related mitigating factors to which Fleming refers: the district court cited those factors when explaining its rulings on the competing departure motions. We have no reason to assume that the district court did not consider those factors when deciding whether to grant a durational departure. *See Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) (stating that "on appeal error is never presumed" (quotation omitted)). The district court's decision to grant an

14

upward durational departure indicates that it weighed the aggravating offense-related factors more heavily than the mitigating factors when determining the length of Fleming's sentence. *See id.*

Lastly, Fleming argues that the district court impermissibly evaded the statutory maximum sentence for his assault conviction and the general rule that an upward-durational departure should not exceed double the presumptive sentence length. A person convicted of second-degree assault with a dangerous weapon "may be sentenced to imprisonment for not more than seven years." Minn. Stat. § 609.222, subd. 1. "[G]enerally in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length," which in this case is 72 months on the assault conviction. *State v. Evans*, 311 N.W.2d 481, 483 (Minn. 1981). The fact that Fleming's 90-month firearm-possession sentence is longer than the authorized sentence for his assault conviction does not invalidate the durational departure in this case. It simply reflects the legislature's determination that a longer sentence is warranted for possession of a firearm by an ineligible person than for second-degree assault. *Compare* Minn. Stat. § 624.713, subd. 2(b) (2012) (setting the statutory maximum sentence for prohibited firearm possession at 15 years), *with* Minn. Stat. § 609.222, subd. 1 (setting the statutory maximum sentence for second-degree assault with a dangerous weapon at seven years).

In conclusion, we observe that "[t]he power to fix the limits of punishment for criminal acts lies with the legislature." *State v. Shattuck*, 704 N.W.2d 131, 148 (Minn. 2005); *see State v. Jones*, 745 N.W.2d 845, 850 (Minn. 2008) (recognizing that the

15

legislature has created statutory exceptions that authorize cumulative punishment for certain crimes that "reflect legislative determinations concerning specific conduct that is eligible for increased punishment even when committed as part of the same behavioral incident". "[Appellate courts] will defer, subject to constitutional limits, to the Legislature's judgment that certain conventional approaches to punishment are not adequate to protect the public safety, and that different approaches to punishment must be considered." *State v. Juarez*, 837 N.W.2d 473, 483 (Minn. 2013) (quotations omitted). Although the judiciary may strike down a sentencing statute on constitutional grounds, Fleming does not argue that section 244.10, subdivision 5a(b), is unconstitutional. *See Jackson*, 749 N.W.2d at 365 (Gildea, J., dissenting) ("But in the absence of a constitutional challenge, we have no authority to rewrite the Guidelines."). In sum, there is no basis for this court not to apply Minn. Stat. § 244.10, subd. 5a(b), as written.

Based on the plain language of Minn. Stat. § 244.10, subd. 5a(b), we hold that the district court did not err by granting an upward durational sentencing departure for Fleming's firearm-possession conviction based on the greater-than-normal danger that Fleming caused to the safety of other people in Folwell Park, where the greater danger arose from the same course of conduct as his illegal possession of a firearm.

## II.

Fleming contends that the district court erred by revoking his probation without offering "specific reasons as to why the need for confinement outweighed the policies favoring probation" and because there was insufficient evidence to prove that the need for confinement outweighed the policies favoring probation.

When revoking probation, the district court must "(1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). In assessing the third *Austin* factor, the supreme court has stated that district courts "should refer" to the following American Bar Association Standards for Criminal Justice:

> Revocation followed by imprisonment should not be the disposition . . . unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005) (quoting *Austin*, 295 N.W.2d at 251). "The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted).

A district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249-50. But district courts must make "fact-specific records setting forth their reasons for revoking probation," and whether the district court made the

17

required findings is a question of law, which appellate courts review de novo. *Modtland*, 695 N.W.2d at 605, 608.

As to the third *Austin* finding, the district court reasoned that confinement was necessary to protect the public from further criminal activity, noting that "Fleming was found with 58 grams of marijuana." The district court also reasoned that Fleming was in need of correctional treatment that could most effectively be provided if he was confined, noting the "near exhaustion of relevant programming opportunities." The district court further reasoned that confinement was necessary to avoid unduly depreciating the seriousness of the violation. The district court stated, "What just boggles my mind is how [Fleming] could go across the street from Folwell Park . . . with drugs in [his] bag." Lastly, the district court reasoned that Fleming is "not amenable to probation and cannot be relied on to avoid antisocial activity."

Fleming argues that the district court "failed to make a proper finding on the third *Austin* factor" and that "[b]eyond its reflexive recitation of the *Austin* factors, the [district] court gave no other reasons for the revocation." The record belies Fleming's contention. The district court provided fact-specific reasons explaining its finding that the need for confinement outweighed the policies favoring probation. Moreover, the fact that the district court initially attempted to limit its revocation to a portion of Fleming's firearm-possession sentence shows that its decision to revoke probation was not a reflexive reaction. In sum, the district court's finding regarding the third *Austin* factor is adequate.

Fleming also argues that "the evidence was insufficient to prove that the need for confinement outweighed the policies favoring probation." Fleming complains that the district court considered its grant of a downward dispositional departure when deciding whether to revoke probation. That was a proper consideration. *See State v. Moot*, 398 N.W.2d 21, 24 (Minn. App. 1986) (affirming probation revocation where district court "made it clear that the presumptive sentence was commitment to prison and the downward departure was *solely* to permit one last attempt to succeed at treatment"), *review denied* (Minn. Feb. 13, 1987); Minn. Sent. Guidelines 3.B (2012) (stating that, when considering whether to revoke a stayed sentence, "[l]ess judicial tolerance is urged for offenders who were convicted of a more severe offense").

Fleming also complains that the district court did not consider available alternatives to prison, such as local jail time or chemical-dependency treatment. But the district court expressly rejected Fleming's request for an alternative disposition and treatment, stating that his admission of marijuana use and request for treatment "flies in the face of the information we had up until today," which was that Fleming did not disclose a marijuana-use issue to probation and that there were not any positive urine-analysis test results suggesting that marijuana use was a problem for Fleming. Moreover, Fleming's probation officer testified, "[A]nything I could think of Mr. Fleming had already participated in as a juvenile or as an adult at the workhouse and, I mean, I felt those resources had been exhausted." Although Fleming currently argues that "there were tremendous and unexplored resources in the community for drug treatment that

19

might have helped to alleviate [his] problems," he did not identify an available treatment program in the probation-revocation proceeding.

Lastly, Fleming asserts that continuing probation would not unduly depreciate the seriousness of the violations and complains that the district court did not actually evaluate this criterion. We disagree. The district court's probation-revocation order notes that "a revocation of less than 60 months of the sentence would not be enough of a sanction for Mr. Fleming's proven probation violations." That statement reflects the district court's consideration of the seriousness of the violations, and we discern no err in the district court's determination that the violations were serious enough to warrant revocation.

In sum, the district court did not abuse its broad discretion by concluding there was sufficient evidence to revoke probation.

## D E C I S I O N

Under the plain language of Minn. Stat. § 244.10, subd. 5a(b), the district court did not err by granting an upward durational sentencing departure for Fleming's firearm-possession conviction based on the greater-than-normal danger that Fleming caused to the safety of other people in Folwell Park, where the greater danger arose from the same course of conduct as his firearm-possession offense. In addition, the district court's finding regarding the third *Austin* factor is adequate, and the district court did not abuse its discretion in determining that there was sufficient evidence to revoke Fleming's probation.

**Affirmed.**

20