*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1032**

State of Minnesota,
Respondent,

vs.

Cole Samuel Tran,
Appellant.

**Filed March 4, 2024**
**Affirmed**
**Halbrooks, Judge**[*]

Sherburne County District Court
File No. 71-CR-20-148

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, George R. Kennedy, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Slieter, Judge; and Halbrooks, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant challenges the revocation of his probation and execution of his sentence, arguing that the district court abused its discretion by finding that the need for his confinement outweighs the policies favoring probation. Because we conclude that the district court properly exercised its discretion, we affirm.

## FACTS

At the time of the incident underlying this matter, appellant Cole Samuel Tran was prohibited from possessing a firearm based on a prior conviction. In January 2020, Tran's probation officer found a firearm in his backpack while Tran, then an 18-year-old high school student, was at school. In February 2020, Tran was charged with possessing or storing a dangerous weapon on school property pursuant to Minn. Stat. § 609.66, subd. 1d(a) (2018), possession of a firearm by an ineligible person pursuant to Minn. Stat. § 624.713, subd. 1(2) (Supp. 2019), and receiving stolen property pursuant to Minn. Stat. § 609.53, subd. 1 (2018).

Tran pleaded guilty to possession of a firearm by an ineligible person. The district court adjudicated Tran guilty under Minn. Stat. § 624.713, subd. 1(2) and sentenced him to a 60-month commitment stayed for five years. The district court noted that Tran's age, remorse, cooperation, and attitude in court favored granting the departure.

The district court stated the following at the sentencing hearing:

> While you are on probation, you are to have no use or possession of any non-prescribed mood-altering chemicals. . . . No drugs and no alcohol while you are on probation.

You will be subject to random testing at the direction of Community Corrections to make sure that you are chemical free. It's at their direction, so—and it's random. You need to make sure that you contact your probation officer and get set up to make sure that those random tests are done. They will be done at the frequency that the Community Corrections officer thinks is appropriate based on what they are seeing. . . .

And I am ordering that you get that chemical dependency evaluation done within 30 days of your release. . . .

. . . .

. . . You are also to follow all of the recommendations from that evaluation. . . .

I am also ordering that you complete the Sherburne County cognitive restructuring program or another cognitive restructuring program in the county where you reside.

In March 2023, the Minnesota Department of Corrections filed a probation-violation report alleging that Tran had failed to (1) remain law-abiding, (2) maintain contact with probation, (3) abstain from the use of mood-altering chemicals, and (4) comply with random chemical testing. On March 24, the district court issued a warrant for Tran's arrest. On March 29, Tran surrendered to law enforcement.

In an updated violation report, corrections officers provided the district court with further information, including that Tran had been charged with "two felonies and a misdemeanor, all [of] which are chemical related offenses" and admitted to alcohol and marijuana use the day prior to turning himself in to law enforcement. The additional offenses were charged in Stearns County which alleged via criminal complaint that Tran was driving with an alcohol concentration of 0.091 and was in possession of six grams of cocaine. If found in violation of probation, corrections officers recommended the district

3

court reinstate Tran's probation with additional conditions, including 90 days in jail and a chemical-use assessment.

In a second, updated violation report, corrections officers stated that they had "overlooked that [Tran] received a dispositional departure at sentencing" and modified the recommendation. The modified recommendation was revocation of the stay of execution for Tran's 60-month sentence.

The district court held a revocation hearing. During the hearing, Tran admitted to using controlled substances including marijuana, failing to report for two urinalysis (UA) tests, attempting to falsify a UA by using another individual's urine, and failing to report for meetings with his probation officer. The district court found that Tran was in violation of the terms of his probation and that the violations were intentional and inexcusable. The district court found that the need for confinement in Tran's case outweighed the policies favoring probation, revoked Tran's probation, and executed Tran's 60-month sentence.

This appeal follows.

**DECISION**

Tran argues that the district court abused its discretion by revoking his probation because the record does not support that the need for his confinement outweighs the policies favoring probation.

The district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). "'A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic

4

and the facts in the record.'" *State v. Hoskins*, 943 N.W.2d 203, 211 (Minn. App. 2020) (quoting *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019)). But whether the district court made the required findings under *Austin* is a question of law that we review de novo. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

If a district court finds that a criminal defendant violated a condition of probation, the district court may either continue the offender on probation or revoke probation and execute a previously stayed sentence. Minn. Stat. § 609.14, subds. 1, 3 (2022); *see also* Minn. R. Crim. P. 27.04, subd. 3(2)(b)(iv)-(v). Prior to revoking probation, a district court must follow the three-factor analysis identified in *Austin* by (1) "designat[ing] the specific condition or conditions that were violated," (2) "find[ing] that the violation was intentional or inexcusable," and (3) "find[ing] that need for confinement outweighs the policies favoring probation." *Austin*, 295 N.W.2d at 250. Because Tran's argument focuses on the third *Austin* factor, our analysis is focused on whether the district court erred in finding that factor was satisfied.

The third *Austin* factor requires the district court to "balance the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety, and base [its] decisions on sound judgment and not just [its] will." *Modtland*, 695 N.W.2d at 606-07 (quotation omitted). This factor is satisfied only if the district court finds "on the basis of the original offense and the intervening conduct of the offender" that:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

5

(iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (quoting *Austin*, 295 N.W.2d at 251).

District courts "should not assume that they have satisfied *Austin* by reciting the three factors and offering general, non-specific reasons for revocation." *Id.* at 608. And a district court must be mindful that the purpose of probation is rehabilitation, and revocation should be a last resort. *Id.* at 606. Therefore, district courts must make "thorough, fact-specific records" and "seek to convey their substantive reasons for revocation and the evidence relied upon." *Id.* at 608.

Tran contends that the district court abused its discretion because the district court's findings do not show its reasons for determining that treatment would be best provided to Tran in confinement as opposed to community treatment options. Tran argues that the district court abused its discretion because it made no findings about why Tran could not pursue chemical treatment in the community and that Tran would be more likely to receive effective chemical treatment in prison. Because the record supports that the district court considered Tran's previous treatment in the community, we disagree.

The district court explained its reasoning at the probation-revocation hearing:

> There's no doubt, Mr. Tran, that you need treatment, and you've had three years to try to get treatment. . . . [Y]ou have not made any effort to avail yourself of the resources that had been provided to you over the past three years. . . .[T]he probation officer's report . . . demonstrates a pattern over the past six months, which . . . [has] been going on for much longer than six months, but this is just an outline of . . . your attempts to avoid Probation and also avoid detection of chemical use that you've had clearly throughout your probation . . . .

6

> [W]hat's clear to the Court in this pattern is that—for example, with respect to your testing, you were called to report . . . [y]ou didn't report then, but three weeks later you did and you were negative. You were called to report [again]. You didn't report then, but you did roughly three weeks later and you were negative. And what that shows me is that you're waiting until the substance is out of your system, you're showing up when you want to, and you're testing when you believe you're going to be negative. And that's further evidenced by the fact that when you do come in on the time when you're not sure if you're not going to be negative or if you're clean, you bring something to avoid detection.
>
> So it shows me that there is this ongoing pattern of your use, ducking from Probation, avoiding contact with them, showing up when you think it's going to satisfy Probation, you're going to be negative, and then you go right back to your old ways, all the while not using any of the resources that the Court has provided to you through probation including the requirement that you get a chemical use assessment and you follow all those recommendations.
>
> You haven't done anything to demonstrate to the Court that the decision that I made years ago to depart was the right one. . . . You have done nothing over the past three years when . . . I gave you every opportunity to show that you were serious about your sobriety, that you were serious about remaining law abiding, and that you were serious about making a change in your life that was going to keep you out of custody instead of sending you to prison . . . .

In response to Tran's argument that probation should be continued because he successfully completed treatment in 2020, the district court reiterated that it had been a long time since his treatment and that Tran had resumed his former patterns following treatment. The district court stated:

> [T]he need for confinement in this case outweighs the policies that do favor probation. Namely, because confinement is necessary first to protect the public from further criminal

7

activity; second, because you are in need of correctional treatment which can be—is only really going to be provided during confinement, because we've tried any kind of treatment while you've been on probation, and not sending you to prison, remaining on probation would unduly depreciate the seriousness of the violation of your probation . . . I am committing you to the Commissioner of Corrections for a period of 60 months.

The Minnesota Supreme Court has reasoned that it is not unreasonable to conclude treatment has failed when a probation offender failed to take advantage of treatment opportunities or "show a commitment to rehabilitation." *Austin*, 295 N.W.2d at 251. And this court's decisions in *State v. Fleming*, 869 N.W.2d 319, 331-32 (Minn. App. 2015), *aff'd*, 883 N.W.2d 790 (Minn. 2016), and *State v. Fortner*, 989 N.W.2d 368, 376 (Minn. App. 2023), are instructive.

In *Fleming*, we concluded that the district court did not abuse its discretion by determining that treatment would be best provided in confinement when a probation officer testified that the probationer had already participated in the programming of which the officer was aware. 869 N.W.2d at 331. In *Fortner*, we affirmed revocation of probation, concluding that the district court adequately explained and supported its decision that the probationer needed treatment in a confined setting. 989 N.W.2d 368 at 377. The district court found that the community-treatment program available to the probationer was the same program available when he was sentenced and reasoned that because the defendant had ultimately left that program and resumed the same pattern of substance use, he needed treatment in a confined setting. *Id.* at 376.

As in *Fleming* and *Fortner*, the district court here considered that while Tran had previously completed community treatment, he did not maintain his sobriety or seek any additional treatment in the preceding three years. Based on this record, we conclude that the district court did not abuse its discretion by finding that Tran is in need of treatment that can only be provided in the context of confinement. *See Austin*, 295 N.W.2d at 249-50 (stating that the district court has "broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion").

**Affirmed.**