*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1492**

State of Minnesota,
Respondent,

vs.

David Wokeph Natee,
Appellant.

**Filed May 28, 2024**
**Affirmed**
**Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-18-27917

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Smith, Tracy M., Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges the revocation of his probation, arguing that the district court abused its discretion by revoking probation (1) without finding that the need for

confinement outweighs the policies favoring probation and (2) without supporting evidence. We affirm.

## FACTS

On January 13, 2020, appellant David Wokeph Natee pleaded guilty to one count each of second- and third-degree possession of a controlled substance. He requested a downward dispositional departure from the presumptive executed prison sentences, arguing that he is particularly amenable to probation because he is remorseful, remained in contact with probation, was law-abiding during the year that the case was pending, and had participated in chemical-dependency treatment since April 2019. Respondent State of Minnesota objected, noting that Natee's offenses involved substantial amounts of heroin and cocaine, and arguing that his participation in treatment did not demonstrate particular amenability to probation because he failed to submit to random drug testing and had tested positive for cocaine.

The district court granted Natee's departure request, imposing stayed concurrent sentences of 111 months and 57 months, and placing Natee on probation for three years. Natee's probation conditions included serving 365 days in the workhouse (for which the district court granted an "immediate furlough to treatment"), abstaining from drugs and alcohol, completing chemical-dependency treatment, submitting to random drug testing, remaining law-abiding, maintaining contact with probation, and not possessing firearms or ammunition.

Approximately one month later, Natee's probation officer filed the first in a series of violation reports. The February 27 report alleged that Natee failed to remain law-

2

abiding, explaining that on January 20—within a week of sentencing—Natee was arrested and charged with two counts of misdemeanor domestic assault. On the day he was released from custody on the new charges, he was arrested for violating a no-contact order. The report also alleged that Natee had attended only half of his treatment sessions, failed to submit to all required drug tests, submitted diluted tests, and tested positive for opiates on another test. Natee did not dispute the allegations. The district court continued him on probation but revoked his furlough and directed him to participate in treatment while at the workhouse.

On September 14, 2021, probation filed a second violation report. The report stated that Natee had again failed to remain law-abiding by incurring new criminal charges of first-degree possession of a controlled substance and possession of a firearm and ammunition. Natee was conditionally released, and the probation-revocation matter was continued for further proceedings along with the new criminal charges.

On June 30, 2022, probation filed a third violation report, alleging that Natee failed to comply with random drug testing, used drugs and alcohol, and failed to maintain contact with probation. On July 5, probation amended the violation report to include additional new charges based on Natee fleeing from law enforcement following a traffic stop during which he admitted drinking alcohol.

On October 4, probation again amended the June violation report, indicating that Natee had been charged with third- and fifth-degree possession of a controlled substance. The probation officer recommended execution of Natee's 111-month prison sentence, reasoning that Natee

has continued to use alcohol and drugs, he [has] failed to comply with random [drug] testing, and he has failed to meet with probation as instructed. [Natee] received a significant departure to start with, however he [has] failed to follow the most basic conditions set forth by the [district court]. . . . [Natee] continues to reoffend and this agent has concern for public safety.

At a December 14 hearing, Natee waived his right to a contested probation-revocation hearing as part of a global resolution of several criminal matters. He admitted that he violated his probation conditions by failing to remain law-abiding, failing to submit to drug testing, testing positive for prohibited substances, and failing to maintain good contact with probation. And he admitted that his violations were intentional and inexcusable. The parties agreed that Natee would serve 41 months in prison for the probation violations and new criminal offenses. But the parties also agreed—and Natee expressly acknowledged—that the district court would impose the 111-month stayed sentence if he did not appear for the next hearing in January 2023. Natee did not appear at the scheduled hearing.

When Natee appeared on July 10, 2023, the state urged the district court to execute the 111-month sentence, and defense counsel acknowledged that this was the parties' agreement. The district court noted the "big break" Natee received at sentencing, his history of probation violations, including committing new criminal offenses, and his overall lack of progress while on probation. After referencing the *Austin* factors, the district court stated that revocation of probation was necessary to protect the public and that failing to do so would "unduly depreciate the seriousness of the violations that [Natee]

4

had." The district court then executed the stayed concurrent 111-month and 57-month prison sentences.

Natee appeals.

**DECISION**

When a defendant violates a condition of probation, the district court may revoke probation and execute a previously stayed sentence. Minn. Stat. § 609.14, subds. 1, 3 (2022). Before revoking a defendant's probation, the district court must (1) "designate the specific condition or conditions that were violated," (2) "find that the violation was intentional or inexcusable," and (3) "find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). We review a district court's decision to revoke probation for an abuse of discretion. *Id.* at 249-50. But whether a district court made the required *Austin* findings is a question of law that we review de novo. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

In making a finding on the third *Austin* factor, district courts consider whether

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (quotation omitted). Only one of the *Modtland* subfactors need exist to support revocation. *See State v. Smith*, 994 N.W.2d 317, 320 (Minn. App. 2023), *rev. denied* (Minn. Sept. 27, 2023). But district courts must "not assume that they have satisfied *Austin* by reciting the three factors and offering general, non-specific reasons for revocation."

5

*Modtland*, 695 N.W.2d at 608. Rather, courts must make "thorough, fact-specific records" and "seek to convey their substantive reasons for revocation and the evidence relied upon." *Id.*

Natee contends that his revocation must be reversed because the district court offered only a "superficial recitation" of the third *Austin* factor and the record does not support the district court's determination that the need for confinement outweighs the policies favoring probation. Neither argument persuades us to reverse.

First, the record defeats Natee's contention that the district court did not thoroughly consider the third factor. Indeed, the district court made express findings as to two of the *Modtland* subfactors—that confinement "is necessary to protect the public from further criminal activity," and reinstating probation "would unduly depreciate the seriousness of [Natee's] violations." The district court made these findings after stating that "it's not ever an easy thing" to execute a 111-month sentence in what was a probation case, and noting Natee's numerous prior probation violations, new criminal convictions, and his failure "to follow the most basic rules of probation."[1] And the court appropriately considered the fact that Natee received a significant downward dispositional departure at sentencing. *See State v. Fleming*, 869 N.W.2d 319, 331 (Minn. App. 2015) (stating a district court may consider a "grant of a downward dispositional departure when deciding whether to revoke

---

[1] The record easily defeats Natee's argument that the district court impermissibly revoked his probation based on his failure to appear for the January 2023 combined sentencing and probation-revocation hearing. While the court noted Natee's counseled agreement that his 111-month sentence would be executed if he did not appear on that date, the district court went on to conduct the requisite *Austin* analysis.

6

probation"), *aff'd on other grounds*, 883 N.W.2d 790 (Minn. 2016). On this record, we conclude that the district court's decision to revoke Natee's probation was not a reflexive response to his violations. *See Modtland*, 695 N.W.2d at 608 (stating that the *Austin* analysis "prevents courts from reflexively revoking probation when it is established that a defendant has violated a condition of probation"). To the contrary, the record demonstrates that the court carefully considered whether to revoke Natee's probation and conveyed its reasons for doing so.

Second, the record amply supports the revocation decision. Natee admitted his numerous probation violations, including new criminal offenses similar to those for which he was originally placed on probation, and ongoing chemical use. He committed the first offenses—two domestic assaults of which he was later convicted—just one week after sentencing. Approximately 11 months after he was released from the workhouse, Natee was charged with two new felony offenses, one involving possession of controlled substances. And approximately ten months later, he was charged with third- and fifth-degree possession of a controlled substance, to which he pleaded guilty. Moreover, despite receiving chemical-dependency treatment since April 2019, a furlough to a treatment program at the time of sentencing, and access to chemical-dependency programming at the workhouse and in the community, Natee did not follow program rules and continued to use controlled substances. And his failure to maintain contact with probation made it difficult for him to receive the benefit of any probation services. In short, the uncontested record supports the district court's assessment that the policies favoring probation have not been met and are outweighed by the need to confine Natee.

7

Natee's citation to *State v. Sayers* for the proposition that the district court erred by failing to consider Natee's "request[s] to attend inpatient chemical-dependency treatment" and "whether such treatment could have helped" him, does not persuade us otherwise. No. A15-1345, 2016 WL 1619389, at *3 (Minn. App. Apr. 25, 2016). In *Sayers*, this court reversed and remanded the revocation of Sayers's probation because the district court failed to consider any of the *Modtland* subfactors or make other findings as to whether confinement outweighed the policies favoring probation. *Id.* Notably, the district court did not, and could not, assess whether treatment had failed because Sayers was never given access to the recommended treatment program. *Id.* at *1, *3.

*Sayers* is neither binding nor persuasive. *See* Minn. R. Civ. App. P. 136.01(c) (stating nonprecedential opinions are not binding authority). As noted above, the district court here made supported findings with respect to two of the *Modtland* subfactors. And the record reflects that Natee was offered chemical-dependency treatment but "continued to use chemicals, . . . failed to comply with random [drug] testing," missed treatment sessions, and did not regularly contact probation, which resulted in probation being "[un]able to case plan with [Natee] and work towards getting him the help he needs to address his chemical dependency issues."

In sum, the district court made specific findings on all three *Austin* factors that show its decision to revoke probation was not, as Natee argues, simply "reflexive." Because the record supports these findings, we discern no abuse of discretion by the district court in revoking Natee's probation and executing his stayed sentences.

**Affirmed.**