*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0550**

State of Minnesota,
Respondent,

vs.

Brooke Marie Brogaard,
Appellant.

**Filed December 29, 2025**
**Affirmed**
**Reyes, Judge**

Stearns County District Court
File No. 73-CR-22-6142

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, River D. Thelen, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rebecca Ireland, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Reyes, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Appellant argues that the district court abused its discretion by revoking her probation because it relied on inadequate and erroneous findings. We affirm.

**FACTS**

In July 2022, respondent State of Minnesota charged appellant Brooke Marie Brogaard with two counts of first-degree drug sale in violation of Minn. Stat. § 152.021, subd. 1(1) (2020), and one count of second-degree drug sale in violation of Minn. Stat. § 152.022, subd. 1(1) (2020). The parties entered into a plea agreement and jointly recommended a downward dispositional sentencing departure, which would stay execution of appellant's 125-month prison sentence for up to five years with supervised probation. The district court accepted the plea and convicted appellant of one count of first-degree drug sale. It also granted the motion for a downward dispositional departure, sentencing appellant to probation in January 2024. As conditions of probation, the district court ordered appellant to, among other things, screen for treatment-court programming, abstain from the use or possession of alcohol and controlled substances, and remain law abiding.

In March 2024, the state filed a probation-violation report, claiming that appellant violated two conditions of her probation: abstaining from the use or possession of controlled substances and remaining law abiding. Appellant's conduct underlying the probation-violation report also led to multiple criminal charges against her in a separate case. In that separate case, appellant entered guilty pleas to a drug offense and a child-endangerment offense.

When probation-revocation proceedings resumed in January 2025 after resolution of the new criminal charges, appellant admitted to the probation violations but requested further probation. The state asked the district court to revoke probation and execute

2

appellant's prison sentence.  After considering the *Austin* factors,[1] the district court revoked appellant's probation and executed the original 125-month prison sentence.

This appeal follows.

**DECISION**

Appellant argues that the district court abused its discretion by revoking her probation because its findings on the third *Austin* factor were inadequate and included erroneous findings.  We address each argument in turn.

## I. The district court made adequate findings to support its determination that the third *Austin* factor is met.

Appellant claims that the district court did not make adequate findings in its revocation order to support the third *Austin* factor.  We are not persuaded.

A district court "has broad discretion in determining if there is sufficient evidence to revoke probation" and we will only reverse "if there is a clear abuse of that discretion." *Austin*, 295 N.W.2d at 249-50.  Whether a district court made adequate findings under *Austin* is a question of law that appellate courts review de novo.  *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

To support the third *Austin* factor, a district court considers three additional subfactors (the *Modtland* subfactors): whether "(i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need of

---

[1] The *Austin* factors refer to the three findings that a district court must make before revoking probation.  *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980).  "[T]he [district] court must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that [the] need for confinement outweighs the policies favoring probation."  *Id.*

3

correctional treatment which can most effectively be provided if [they are] confined; or (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607 (quotation omitted). "Only one *Modtland* subfactor is necessary to support revocation." *State v. Smith*, 994 N.W.2d 317, 320 (Minn. App. 2023), *rev. denied* (Minn. Sept. 27, 2023). In revoking probation, the district court "must seek to convey [its] substantive reasons for revocation and the evidence relied upon." *Modtland*, 695 N.W.2d at 608.

We address each of the subfactors in turn.

### A.  Subfactor 1:  Confinement is necessary to protect the public from further criminal activity by appellant.

Appellant argues that the district court did not provide adequate findings to support its determination that her confinement was necessary to protect the public.

A district court may support this subfactor by finding that probation "was not an effective or reliable deterrent of further criminal activity." *Smith*, 994 N.W.2d at 321; *see also Upchurch v. State*, 184 N.W.2d 607, 608 (Minn. 1971) (contextualizing deterrent effect of probationary condition prohibiting alcohol use).

Here, the district court found that appellant "almost immediately returned to using controlled substances" after sentencing and that appellant "was found with her young child in a home while possessing controlled substances, namely Fentanyl." The district court further found that "when [appellant] uses controlled substances, she puts herself, her child, and the community at risk."

4

The record supports these findings. Appellant violated her probation less than 60 days after its imposition, which involved separate criminal charges of drug possession and child endangerment. We conclude that the district court made sufficient findings to support its determination that appellant's confinement is necessary to protect the public from further criminal activity.

B.     **Subfactor 2:  Appellant is in need of correctional treatment that can most effectively be provided if she is confined.**

Appellant also argues that the district court found, without evidence, that she "could most effectively address her substance-use disorder if imprisoned."

Probation revocation may be appropriate when "appellant has been offered treatment but has failed to take advantage of the opportunity or to show a commitment to rehabilitation." *Austin*, 295 N.W.2d at 251.

Here, the district court found that appellant: "has a long history of struggling with controlled substances"; "was given the opportunity to be on probation and seek the treatment she needs"; received a dispositional departure in part because of her "proposed participation in [treatment-court] programming"; did not participate in "any programming" while on probation; was not a "willing partner" while on probation; and only began participating in treatment programming while in confinement.

The record supports these findings. In her initial plea agreement, appellant agreed to be screened for treatment-court participation. As stated above, in both the district court's verbal sentencing discussion and written departure report, it emphasized the importance of appellant's willingness to participate in treatment-court programming. While on probation,

5

however, appellant did not participate in treatment-court programming. On the other hand, while in custody, appellant participated in an outpatient treatment program and made "progress in addressing her mental health." We conclude that the district court made sufficient findings to support its determination that appellant is in need of correctional treatment that can most effectively be provided in confinement.

### C. Subfactor 3: It would unduly depreciate the seriousness of the violation if probation were not revoked.

Lastly, appellant argues that the district court did not make sufficient findings to support its determination that failing to revoke probation would unduly depreciate the seriousness of the probation violations.

When deciding whether to revoke probation, the district court may consider the severity of the violation(s) and the probationer's criminal history. *See* Minn. Sent'g Guidelines 3.B (2020) (stating that, when considering whether to revoke stayed sentence, "[l]ess judicial tolerance is urged for offenders who were convicted of a more severe offense or who had a longer criminal history"). The district court may also consider the initial grant of a downward dispositional departure. *See State v. Fleming*, 869 N.W.2d 319, 331 (Minn. App. 2015) (upholding district court's consideration of downward dispositional departure in probation revocation), *aff'd*, 883 N.W.2d 790 (Minn. 2016).

Here, the district court noted appellant's "long history of struggling with controlled substances" and the short time between probation imposition and violations. The violations were also "very serious" because they involved possession of controlled substances around

a juvenile. The district court found that appellant "failed to demonstrate her amenability to probation."

As discussed, the district court initially imposed probation in lieu of imprisonment, appellant then violated this probation within 60 days, entered guilty pleas to drug possession and child endangerment based on the conduct underlying the violations, and admitted to the probation violations alleged here. We conclude that the district court made sufficient findings to support its determination that failure to revoke probation would unduly depreciate the seriousness of the violations.

We conclude that the district court made adequate findings to support the third *Austin* factor based on all three *Modtland* subfactors.

## II. Appellant forfeited her remaining arguments, and no prejudicial error is obvious on mere inspection.

Appellant also claims that the district court abused its discretion by making three clearly erroneous factual findings in its revocation order: (1) that appellant's participation in treatment-court programming "was a significant basis" for the district court's original sentencing decision; (2) that appellant did not take responsibility for her probation violations "in a timely manner"; and (3) that appellant admitted to violating her probation by failing to comply with programming recommendations.

Appellant cites to only one case to support her assertion that the district court's revocation order contains three erroneous findings, *Eason v. State*, 950 N.W.2d 258, 263 (Minn. 2020). But *Eason* is about a petition for postconviction relief, not probation revocation.

7

"[A]n assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is [forfeited] and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *State v. Bellazan*, 18 N.W.3d 385, 402 (Minn. App. 2025) (quotation omitted), *rev. denied* (Minn. May 28, 2025). We conclude that appellant forfeited these claims. We turn to inspect the record to determine whether any prejudicial error is obvious.

**A.      No prejudicial error is obvious in the district court's findings regarding appellant's proposed participation in treatment-court programming.**

For appellant's first argument, she appears to misinterpret the district court's findings. While she argues that the district court erroneously "found that [her] participation in '[treatment-court] programming' on probation was a significant basis for the court's original sentencing decision," that is not the same language in the record.

In its revocation order, the district court found that appellant's "proposed participation in [treatment-court] programming," not her *completion* of that programming, "was a significant basis for the dispositional departure." This accurately reflects the district court's verbal sentencing discussion and written departure report, both of which emphasized the importance of appellant's *willingness* to participate in treatment-court programming. We conclude that the district court did not prejudicially err by finding that appellant's proposed participation in treatment-court programming was a significant basis for her dispositional departure.

**B.**     **No prejudicial error is obvious in the district court's finding that appellant failed to take responsibility in a timely manner.**

Appellant violated her probation in March 2024.  Over the following ten months, appellant attended six hearings about the probation revocation.  The first five hearings focused on procedural discussions in which the district court and both parties agreed to continue the case.  Appellant did not admit to the probation violations at any of the first five hearings.  Then, in the separate case, appellant pleaded guilty to a drug charge and to a child-endangerment charge.  After entering those pleas, this case resumed, and appellant fully admitted to the probation violations.

In its revocation order, the district court expressed concern about appellant's "lack of acceptance of responsibility in a timely manner."  The record supports this finding.  Appellant violated her probation less than 60 days after it began.  Although a probation-revocation hearing can be postponed pending disposition of a criminal case, appellant could have instead elected to admit to the violations.  *See* Minn. R. Crim. P. 27.04, subd. 2(4)(c) (providing framework to postpone or hold probation-revocation hearing).[2]  If she had admitted to the violations before resolving the new criminal charges, any testimony she gave would "not [be] admissible against the probationer at a criminal trial arising from the alleged crime," except for purposes of impeachment or if she was charged with perjury.  *Id.*  Appellant chose not to admit to the probation violations for almost ten months.  We

---

[2] Although not included in rule 27.04, appellate courts have also recognized an intermediate "admit/deny hearing" at which appellants can admit to the alleged probation violations.  *See State v. Beaulieu*, 859 N.W.2d 275, 277 & n.1 (Minn. 2015).

conclude that the district court did not prejudicially err by finding that appellant did not take responsibility for the violations in a timely manner.

**C.     No prejudicial error is obvious in the district court's finding that appellant did not comply with programming recommendations.**

In its recitation of the undisputed facts in the revocation order, the district court stated that appellant admitted to "violating her probation [by] failing to comply with all programming recommendations." This is contradicted by the record, in which appellant admitted to two probation violations, neither of which involved "programming." Following its error, the district court's revocation order correctly stated that: "The only disputed issue before the [district court] was the consequence/sentence for the probation violation." The rest of the order then correctly analyzed the *Austin* factors in the context of probation revocation. As discussed, the district court made sufficient findings to justify the probation revocation under the third *Austin* factor. Although we agree that the district court erred, we conclude that this error was not prejudicial. *See Bellazan*, 18 N.W.3d at 402.

**Affirmed.**